This video addresses three errors that need to be corrected. The first error is that this car deterred Infinity's evaluation and service on industry's longest ever run. The second error is that Corbett isn't resolved to an actual case on separate judgment in favor of the moving party as opposed to in favor of the non-moving party. And the third error was Corbett didn't face a single court. Your Honor, it's not as much of a question of where we want to be as it is when we're seeking precedent in this case. And it was an incorrect decision based upon the follow-up and diversity is determined by the following. I'm not going to go into this in detail, Your Honor. There's obviously an increase in understandability. I'm going to go into it in many details in correspondence with respect to resolving facts in favor of the moving party. We've been sending out organized facts in court as an example of longstanding precedent on separate judgment in favor of the moving party. So, it's hard to hear any responses about whether the court can decide, and did decide in this case, that the Infinity's actions were reasonable as a measure of law. I'm going to go to the court first. This was done by the moving party in the district court. The district jury or the moving jurors in the district court essentially conceded that there was been a fake motion being seen in court for court damages. The court then, on its own, sued the moving party. And the moving party's decision to fire the jury was a jury decision. So, it's a specific motion that's not on the Infinity's actions. It's a fair motion. That's fair. And they awarded that incorrectly. I'm not saying they didn't do it. But the brief thing was, if we did commit this kind of thing, then the client can prefer to do this. There was no argument about the Infinity's view governing from all judgement and evidence essentially responding to the brief in this court. It was not presented to the district court and the moving papers. And this court is clear. We cannot continue arguments in this court in order to present it to the district court or to the Infinity's. It was presented to the district court. The jury is the developer jury. They are the jury in most law situations. There is a pending proceeding in this case. The pending subpoena in this case is based in part upon the failure to pay the money in this case, made it so that you started unreacted. So, the developer jury is the jury in this case. They are the jury in most law situations. And that's the point. That is the motion. There is a pending subpoena resulting from the innocent and the injuries of the innocent. But there is also pending subpoena in Brussels due to these failures. And, in other words, he has continuing pending and continuing issues. And the failure by Infinity to meet its policy premise was a solution for rotating the jury by a jury member. You know what? And so, I understand that the district court can choose other excuses as well. But I think it needs to be, you are the only person that responds to this kind of thing. You respond to our calls for the letter. Yes. Yes. Thank you. I'm not sure that I'm going to say anything. I'm talking to the panel. If there's anything else you want to present, if there's anything else you want to mention, you can come in there and do it. That's what you need. I don't think that's what we've always said in the area of subpoena funding. It is a very victorious presentation. So, what is that? And can you respond to it, please? Great question. One thing that was on the action was medical records from the federal director, DJR, jury member injuries. And medical records from the more assertive, unrelenting, trained orthopedic surgeon. They submitted in the last minute, it shows the orthopedic surgeon is burdened with a very severe discussion. And everybody agrees it's very abnormal for a medical school woman. And the orthopedic surgeon's recommendation, and he worked on the orthopedic surgeon, and it cost him over $150,000. And the statement by the orthopedic surgeon, when you're speaking, that's the conclusion surgery. And she was in the most significant part of her decision. She would become paralyzed. That's a good first question. So, if you're in that area, there's something that not only talks to me, but I think it has to do with that there's rules, where you are under the supervision that she was previously able to perform the surgery. But I'm pretty sure not. You are in a part of her decision. You can see it in her statement. And her record providers need to send you something that is much more than surgery. What do you feel to do with respect to that in this case? The decision is done. Excellent. You're absolutely right. You're right. You're absolutely right. You're doing it in a medical school. Of course, other countries may not know this fact. But she was in a medical school. You're absolutely right. You're absolutely right. She was in a medical school. She was in a school. It was a medical school. It was a school in Portland. And it was in the upper part of New York City. So, you are seeing it in surgery. So, there's the trauma finding out. And you can see the pressure that she's on. And you see that they are responding to that demand. And they're sending it to the facility, and they're sending it to the college. And then there's the confirmation of the court in Fort Lauderdale. So, there's a lot of things that you can do. She's in a school in Fort Lauderdale. What does that mean? What does that mean? You can't just fix it there. You can't do that. And then the doctor remembers that she requires an injection. And she may become paralyzed. And the reason is, if the facility chose a volume of information deficient, not filled with false news, and didn't get any kind of truth, then you just have to remember that you've been in a school in Fort Lauderdale for many years. And you can't just put that information there and make it a factor. Well, you can't just put it in a facility. You can't just put it in a school. You can't just put it in a facility. You can't just put it in a school. You need to come back and see what's wrong with that. And it's just going to be people's part of this. And that's how surgery and even if she goes and falls, and can call the church, and can do the community thing, there's a pain. There's a money order. There's a need to do this. Yeah, I'm just trying to figure out how I can do that. I'm trying to figure out how I can have this process on. Did she want the communication process? Did she want the surgery? Was she suspicious? It's, you know, it was consistent. At some point, I remember when Brutus reported this because there was no official reasonable issue for the civil court. But then, before arguing on these questions, there are, obviously, reasonable, written correspondence and reasonable communications between my office and the insurance company about what was going on while she didn't get the surgery. About how racist we thought it was, they were asking Brutus to fraud and falsify the surgery before they even made a couple statements where he was the failure to make a couple statements in conclusion of the medical certificate. That's right. Brutus said, I'm going to write a letter to you and you're going to tell me what you're going to do and you and Brutus gave me the instructions. And you put it straight to the insurance company. That's right. So, your argument is that there are some extensions involved in this. My argument is that Brutus, of course, I don't think that's what he means. So, there are some extensions. So, as a matter of fact, what you said earlier is that she received a complete consultation saying that they're doing the same thing as the first year of childbirth, right? The first year, she'll be in the hospital. The second year, she'll be in the hospital. So, as a matter of fact, the first year of childbirth, she received a full-step surgery and during the second, it was a complete extension that was verified by Brutus and she made that surgery. And so, your response is that you're not speaking to the surgeon. I'm not speaking to the surgeon, I'm speaking to your office. So, you're talking about the genuineness of speech as opposed to the theory of the genuineness of speech. I realize that's not a theory. That's just a terminology. Your office is a two-year institution. So, I'm not sure that you're going to be able to advocate for that. Well, first of all, let me start with the first thing that I'm going to talk about is the genuineness of speech. Because, as I mentioned, in Brutus and Fuller's case, since 1800, Brutus didn't have the genuineness of speech either. And in fact, Brutus is basically one of the experts on the jury and or can think of on the jury's hands. Obviously, what this indicates is that these jurors were involved in this issue. And specifically, they are involved in a number of dangerous racial and age-based violence. For this court, as I said, the juror is not in time to take on this matter of power. Viewing the facts that are most favorable to the plaintiff, a jury juror can conclude that these jurors are unreasonable. In other words, there has to be no situation where the jury can conclude that this was unreasonable. Yet, in the case of Brutus, we call this case the time-invaded jury. And in the time-invaded jury, there is a little ball that is served and all the information that they have is on the table, which means you're a pure surfer. So, that's a very bright side. And that's why they're going to be the most likely people who require surgery. But, I think it's not a revelation. It's just that we're concerned that they're concerned together. So, they're talking to each other as to maybe she's not enough and this seems a little bit out of place  like she's not enough    maybe he's then she's not exactly worth everything and she needs    chancellor or some person who knows that she makes all that make all that possible. And, we don't have further information left in the history court case that should discuss how the California Supreme Court might rule on the genuine future since the 2014 Supreme Court has ruled on this case where it is a young woman who was seeking $100,000 for insurance money for $85,000 and $15,000 and they didn't ask for more information and they didn't hire an expert even though she did hear the           question     question and they didn't hire an expert even though she did hear the question and they didn't hire an expert even though she did   question and      hire   even though she did question and  didn't hire an  even  she did hear the
judges: Reinhardt, Thomas, Christen